UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CORY GREGORY, | ) | |
|    Plaintiff, | ) | |
| | ) | |
|    vs. | ) | Case No. 21-1097 |
| | ) | |
| IDOC DIRECTOR ROB JEFFREYS, et.al., | ) | |
|    Defendants. | ) | |

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for merit review of the Plaintiff's claims.  The Court is required by 28 U.S.C. §1915A to "screen" the Plaintiff's complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff says she is a transgender woman who was diagnosed with gender dysphoria in May of 2019.  Plaintiff was transferred from the Illinois Department of Corrections (IDOC) to the Rock Island County Jail on November 13, 2020 for resentencing.  While Plaintiff is currently incarcerated at the jail, she anticipates she will return to Pontiac Correctional Center after her sentencing.[1]  Therefore, Plaintiff has identified 18 IDOC Defendants including IDOC Director Rob Jeffries; Pontiac Wardens

---

[1] Plaintiff has filed a separate lawsuit concerning her living conditions at the jail. *See Gregory v. Rock Island County Jail,* Case No. 21-4039

Leonta Jackson and Teri Kennedy; Assistant Wardens Cox and Emily Ruskins; Sergeant Carrisa Garbe; Sergeant Sellers; Lieutenant Henry; Internal Affairs Officers Daniel Bailey and Anglin; Correctional Officers Luke Wissen, Curl, Bufford, and Kuhl; Wexford Health Sources; Dr. Renzi; Dr. Tilden; and Nurse Hansen.

Plaintiff's 57-page, single-spaced complaint provides a litany of complaints concerning her incarceration. Unfortunately, Plaintiff at different points in her complaint provides an overview of general issues, background, and statistics concerning transgender inmates rather than focusing only on her specific experiences and claims.  For instance, the first few pages of her "Factual Allegations" provide a history of gender dysphoria within IDOC. (Comp., p. 9-16).  Plaintiff is advised if she plans to file any additional complaints or motions, she **MUST limit her allegations to incidents which specifically involve Plaintiff and the named Defendants**.  This avoids confusion over intended claims.

A.  LIVING CONDITIONS/ CELL ASSIGNMENT

Plaintiff entered Pontiac Correctional Center on February 28, 2019 and she was diagnosed with gender dysphoria four months later. Plaintiff was moved to the East Protective Custody Unit where she claims she faced sexual harassment and groping. Specifically, on November 7, 2019, Plaintiff was housed with inmate KG.  Plaintiff knew the inmate had a violent history and asked Defendants Garbe, Sellers, and Dr. Renzi to move to a different cell, but nothing was done.  On November 27, 2019, Inmate KG physically assaulted Plaintiff striking her several times.  Although Plaintiff initially denied the assault for fear of retribution, an officer observed the attack and both

2

inmates were moved to segregation.  After an investigation, Plaintiff was released from segregation.

Plaintiff then moved back to the East Protective Custody Unit.  Plaintiff says from January of 2020 through April of 2020 she was housed with two different cellmates and describes her concerns about each.

On April 16, 2020, Defendant Henry moved plaintiff into a cell with Inmate TY, "an inmate that Plaintiff knew through past experience to be sexually aggressive." (Comp., p. 19). Plaintiff told Defendant Henry about her concerns, but nothing was done. Plaintiff notes her unsuccessful attempt to declare a hunger strike in protest. Plaintiff continued to ask Defendants Henry, Garbe, and Sellers to move her based on Inmate TY's past conduct, but no action was taken.

Plaintiff also filed a Prison Rape Elimination Act (PREA) complaint.  Defendant Internal Affairs Officers Bailey reviewed Plaintiff's PREA complaint on April 22, 2020. Internal Affairs ordered Plaintiff moved to the South Protective Custody Unit, but did not order immediate action. Plaintiff claims Inmate TY "tried to force Plaintiff to have sex that night." (Comp., p. 20).

Plaintiff was moved the following morning, but she asked to move to suicide watch cell for her protection. Plaintiff notes Defendant Officer Curl made several disparaging comments on her transgender status during this time.

Plaintiff was moved to South Protective Custody status on April 27, 2020 over her objections.  She also filed a grievance concerning her complaints, but Defendant Henry responded noting there would be no special accommodations due to Plaintiff's

sexual orientation, and "if there was a valid issue he would not have been approved for double celling in the first place." (Comp., p. 21).

Plaintiff was moved back to East Protective Custody on May 7, 2020. Plaintiff says there were very few inmates in the unit and one of his friends, Inmate RW was assigned to clean cells. On May 9, 2020, Inmate RW was fired from his prison job and Defendants Garbe, Buffod and Kuhl spread untrue rumors that the two inmates were observed having sex. Plaintiff claims based on the rumors, other inmates sexually harassed her and she was "touched and groped." (Comp., p. 22). Plaintiff does not provide any further information to support this claim such as when, where, and how the physical assaults took place.

Plaintiff maintains Defendant Garbe harassed Plaintiff daily, isolated Plaintiff from Inmate RW, and placed Plaintiff on the yard with inmates the officer knew were threatening.

Plaintiff filed other PREA complaints including one against Defendant Garbe, but she alleges Defendant Bailey did not properly investigate. Plaintiff wrote another PREA report against Defendant Wissen for calling Plaintiff a fagot and refusing to call a crisis team. Plaintiff says her PREA complaint was thrown out and she no longer bothers to file them.

For clarification, prisoners cannot sue under the PREA because there is no private right of action. *See Winners v. Hyatt*, 2021 WL 1165140, at *2 (N.D.Ind. March 25, 2021). In addition, "prison staff's failure to follow internal policies pertaining to PREA

reports does not state a claim." *Id. citing Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Plaintiff's complaint also includes a vague allegation that "inmates threatened and harassed Plaintiff day and night." (Comp., p. 25). Plaintiff does not state when or how she was threatened or harassed, nor if she complained to any specific Defendant about this issue.

Finally, Plaintiff mentions two disciplinary tickets she received and notes since she came out as a transgender inmate at Pontiac, she has received six tickets in a year.

B.  MEDICAL ISSUES

Plaintiff wrote to Defendant Dr. Renzi repeatedly from her diagnosis of gender dysphoria in June of 2019 until March of 2020, asking to begin hormone replacement therapy.   Plaintiff also filed several grievances, but she did not receive responses.

Plaintiff admits she was provided hormone replacement medication at some point, but Plaintiff says it is important to receive the medication at regular intervals. Instead, she frequently experienced disruptions due to delays in handing out medications, changes in housing, or failure to renew her medications.  When her medication was not regularly provided, Plaintiff's symptoms worsened including anxiety, depression, self-mutilation, and thoughts of suicide.  In addition, Plaintiff says her medications for bipolar disorder and anxiety are "mismanaged," but she does not provide specific examples. (Comp., p. 37).  Plaintiff does not indicate who was responsible for providing this medication, when and how did she complain about the problems, and what response did she receive?

Plaintiff further alleges neither Wexford nor IDOC make any effort to provide means for social transitioning such as "Real Life Training" or regular, safe hair-removal methods. (Comp., p. 31). Plaintiff claims she has not been provided regular mental health counseling or therapy for her gender dysphoria. Again, Plaintiff does not indicate who is responsible for counseling or knew she was not receiving needed counseling.

On September 8, 2020, Defendant Hansen called Plaintiff to the nurses' station to tell her the medical permit for showers was discontinued. Defendant Dr. Tilden had authorized the permit when Plaintiff began hormone replacement therapy. Without the permit, Plaintiff was forced to clean in front of cellmates or other inmates. Plaintiff says inmates routinely hassled her or asked to see his breasts. When she told Defendant Hansen about her fears, she told Plaintiff to get used to it and everyone faces a risk of rape.

C. TRANSFER REQUESTS

Plaintiff says she has repeatedly requested a transfer to a women's prison, but her request has been denied "every step of the way, up to and including by Defendant (IDOC Director) Jeffreys." (Comp., p. 33). Plaintiff does not state when and how she asked for a transfer. Nonetheless, Plaintiff says administrators like Defendant Jeffreys are well aware transgender inmates face a substantial risk of harm. Plaintiff then refers to the many requirements of the PREA and various other general statistics rather than referring to her specific complaints.

Plaintiff says she faces a serious risk of harm and a deterioration of her mental health status if she is not housed in a female institution.  However, the Court notes Plaintiff is not currently housed in IDOC.

D. SPECIFIC COUNTS

Based on her allegations, Plaintiff ends her complaint with nine separate counts. Unfortunately, Plaintiff includes a wide variety of allegations under each claim making it difficult to clearly decipher each intended count.

Count I alleges Defendant IDOC Director Jeffreys violated Plaintiff's equal protection rights in his official capacity.  Plaintiff says Defendant Jeffreys has discriminated against Plaintiff based on her transgender status, refusal to evaluate Plaintiff on an individual basis, and refusal to place Plaintiff in an women's prison.

Count II alleges Defendants IDOC Director Jeffreys and Pontiac Warden Jackson violated Plaintiff's equal protection rights in their official capacities based on the pervasive policy and practice of allowing staff to sexually harass Plaintiff based on her transgender status.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Lisle v. Welborn*, 933 F.3d 705, 719 (7th Cir. 2019), *citing Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "The Equal Protection Clause also protects against 'discrimination on the basis of sexual orientation.'" *Alsanders v. Martain*, 2021 WL 2453945, at *1 (N.D.Ind. June 16, 2021), *citing Harris v. Farris*, 809 F.3d 330, 334 (7th Cir. 2015). To state a claim, a prisoner must

allege "defendants intentionally treated him differently because of his race ... ethnicity, sex, religion, or other proscribed factor...." *Lisle,* 933 F.3d at 719–720.

In addition, "[i]t is well-established that suits against government officials in their official capacity are suits against the governmental entity of which the officer is an agent." *Ames v. Randle*, 933 F.Supp.2d 1028, 1038 (N.D. Ill. March 18, 2013); *citing Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). A civil rights lawsuit for damages against a state official in his official capacity is barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). However, a claim for injunctive relief is not prohibited if a plaintiff demonstrates his constitutional rights were violated pursuant to an unconstitutional policy, practice, or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff does not directly refer to a policy or practice. However, giving Plaintiff the benefit of notice pleading, she has alleged Pontiac's Warden violated Plaintiff's equal protection rights based on a policy or practice of discriminating against transgender inmates in housing placement in the facility. *See Hampton v. Baldwin*, 2018 WL 5830730, at *12 (S.D.Ill. Nov. 7, 2018)(equal protection claim based on policy of placing transgender inmate in facility of their assigned sex at birth). In addition, Plaintiff has adequately alleged Defendant Warden Jackson violated Plaintiff's equal protection rights based on a policy and practice of allowing staff to sexually harass transgender inmates. *See Hampton,*2018 WL 5830730, at *12 (transgender inmate alleges equal protection claim based on ongoing sexual harassment).

However, it is unclear whether Plaintiff may pursue either official claim since he can only receive injunctive relief. Plaintiff is not currently housed in an IDOC facility, nor is she currently in IDOC custody. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Plaintiff says she will be transferred back to Pontiac or another IDOC facility after he is resentenced. This is an issue which can be better addressed once Defendants are served.

Count III is entitled "Failure to Protect," but is difficult to interpret based on the variety of accusations listed. (Comp., p. 43). "To state a claim premised on prison officials' failure to protect him from harm, Christopher must allege that the defendants knew of and disregarded an excessive risk to his health and safety." *Christopher v. Buss*, 384 F.3d 879, 882 (7th 2004). Unfortunately, Plaintiff includes three pages of allegations in support of this count making it difficult to interpret the specific failure to protect claim.

Nonetheless, based on the facts alleged in the complaint, Plaintiff has clearly stated Defendants Garbe, Sellers, and Renzi failed to protect her from an inmate assault on November 27, 2019 when they refused to move Plaintiff; and Defendants Henry, Sellers, Garbe and Bailey failed to protect Plaintiff from an inmate assault on April 22, 2020 when they refused to move Plaintiff.

Plaintiff mentions Defendant Nurse Hansen informed Plaintiff her shower permit was discontinued, but it is not clear the Nurse had authority to issue or stop the

permit. In addition, while Dr. Tilden issued the permit, it is not clear if the doctor was aware it was canceled or whether the Plaintiff asked for another permit. Plaintiff has not clearly articulated a failure to protect claim or other constitutional violation based on the shower permit alone.

Plaintiff has also failed to clearly articulate an official capacity claim alleging a failure to protect, nor has she clearly stated how any supervisor was directly involved in her allegations. *See Wilson v. Warren Cty., Illinois*, 2016 WL 3878215, at *3 (7th Cir. 2016)(plaintiff must "show that the defendants were personally responsible for the deprivation of their rights.").

Count IV alleges deliberate indifference to a serious medical condition, but again Plaintiff includes pages of allegations making it difficult to decipher her claim. (Comp., p. 47-51). To articulate an Eighth Amendment violation, a plaintiff must allege she suffered from a serious medical condition and the defendant was deliberately indifferent to that condition. *See Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). Plaintiff has adequately alleged Defendant Dr. Renzi violated hers Eighth Amendment rights based on delays and disruptions in receiving hormone replacement therapy.[2]

Count V alleges Defendants IDOC Director Jefferys violated her rights pursuant to the Americans with Disabilities Act. To articulate a claim, Plaintiff must allege: (1) she was a qualified individual with a disability; (2) she was excluded from or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected

---

[2] Plaintiff's "Factual Allegations" only mention Dr. Renzi's responsibility and involvement in the prescribed hormone replacement therapy. (Comp., p. 27).

to discrimination; and (3) the exclusion, denial of benefits, or discrimination was
because of his disability. *E.g., Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018)
(citation omitted).

While Plaintiff has alleged the Defendant discriminated against her based on her
gender dysphoria, it is unclear whether she has identified a disability.  For the purposes
of notice pleading, the Court will allow Plaintiff to proceed with this claim against the
Defendant in his official capacity based on a failure to accommodate her disability. *See
Venson v. Gregson*, 2021 WL 673371, at *3 (S.D.Ill. Feb. 22, 2021)(based on the "unsettled
state of law," *pro se* prisoner allowed to proceed with an ADA claim based on disability
of gender dysphoria);  *Hampton*, 2019 WL 3046332, at *1 (*pro se* prisoner allowed to
proceed with ADA claim for failure to provide reasonable accommodations for gender
dysphoria disability).  Again, it is unclear whether Plaintiff will be able to proceed with
this claim since she can only obtain injunctive relief and she is not currently in IDOC
custody.

Count VI alleges "unlawful policy and practice" again against Defendants
Jeffreys and Jackson. (Comp, p. 52). This claim appears to repeat Plaintiff's previous,
equal protection claim.

County VII alleges a state law claim of intentional infliction of emotional distress
against all named Defendants. To state a claim, a plaintiff must allege (1) the defendants
engaged in extreme and outrageous conduct; (2) the defendants either intended to
inflict severe emotional distress or knew there was a high probability that their conduct

would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017). This claim "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 126 Ill.2d 78, 90, 533 N.E.2d 806, 809 (1988)(internal quotation omitted). "Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

Plaintiff's complaint simply alleges each Defendants committed this state law tort, but Plaintiff does not specify the conduct alleged her 57 pages of allegations which she believes supports this allegation against each named Defendant. Therefore, Plaintiff has failed to provide the Defendants with adequate notice of this claim.

CONCLUSION

Based on a review of Plaintiff's complaint, she has the following claims before the Court:

> 1) IDOC Director Jeffreys violated Plaintiff's equal protection rights based on a policy or practice of discriminating against transgender inmates in housing placement.
> 2) Defendants IDOC Director Jeffreys and Pontiac Warden Jackson violated Plaintiff's equal protection rights based on a policy and practice of allowing staff to sexually harass transgender inmates.
> 3) Defendants Garbe, Sellers, and Renzi failed to protect her from an inmate assault on November 27, 2019
> 4) Defendants Henry, Sellers, Garbe and Bailey failed to protect Plaintiff from an inmate assault on April 22, 2020
> 5) IDOC Director Jefferys violated Plaintiff's rights pursuant to the Americans with Disabilities Act when IDOC failed to accommodate her disability.

It is unclear whether Plaintiff can proceed with any of her official capacity claims at this juncture.  Plaintiff can only obtain injunctive relief for these claims, but she is no longer in IDOC custody.

If Plaintiff believes she can clarify any of her allegations, she may file a proposed amended complaint.  The amended complaint must stand complete on its own, include all claims and Defendants, and must not refer to any previous pleading.  The complaint must not include an overview or history of transgender issues in prisons.  Instead, the complaint **must** be limited to specific events involving the Plaintiff and Defendants.  In addition, Plaintiff should list each claim and the factual support for that claim only one time to avoid confusion.

IT IS THEREFORE ORDERED:

1) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges:

> a) IDOC Director Jeffreys violated Plaintiff's equal protection rights based on a policy or practice of discriminating against transgender inmates in housing placement.
> b) Defendants IDOC Director Jeffreys and Pontiac Warden Jackson violated Plaintiff's equal protection rights based on a policy and practice of allowing staff to sexually harass transgender inmates.
> c) Defendants Garbe, Sellers, and Renzi failed to protect her from an inmate assault on November 27, 2019
> d) Defendants Henry, Sellers, Garbe and Bailey failed to protect Plaintiff from an inmate assault on April 22, 2020
> e) IDOC Director Jeffreys violated Plaintiff's rights pursuant to the Americans with Disabilities Act when IDOC failed to accommodate her disability.

Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

2) This case is now in the process of service.  Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions.  Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature.  Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

3) The Court will attempt service on Defendants by mailing each Defendant a waiver of service.  Defendants have 60 days from service to file an Answer.  If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service.  After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service.  Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

5) Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk.  A motion to dismiss is not an answer.  The answer should include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings shall be to the issues and claims stated in this Order.  In general, an answer sets forth Defendants' positions.  The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants.  Therefore, no response to the answer is necessary or will be considered.

6) Once counsel has appeared for a Defendant, Plaintiff need not send copies of her filings to that Defendant or to that Defendant's counsel.  Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel.   The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3.  If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

7) Counsel for Defendants is hereby granted leave to depose Plaintiff at her place of confinement. Counsel for Defendants shall arrange the time for the deposition.

8) **Plaintiff shall immediately notify the Court, in writing, of any change in her mailing address and telephone number.  Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

9) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.

15

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

**1) Dismiss Defendants Cox, Kennedy, Ruskin, Wissen, Curl, Bufford, Kuhl, Anglin, Wexford, Tilden, and Hansen for failure to state a claim upon which relief can be granted pursuant to by 28 U.S.C. §1915A; 2) Dismiss Plaintiff's Motion for a Status Update as moot. [11]; 3) Attempt service on Defendants pursuant to the standard procedures; 4) Set an internal court deadline 60 days from the entry of this order for the Court to check on the status of service and enter scheduling deadlines; and 5) Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

ENTERED this 26th day of October, 2021.


                    s/James E. Shadid
        _____
                JAMES E. SHADID
            UNITED STATES DISTRICT JUDGE



.