wUNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CORY GREGORY,                        )
   Plaintiff,                         )
                                     )
vs.                                  )    Case No. 21-1097
                                     )
IDOC DIRECTOR ROB JEFFREYS, et.al.,  )
   Defendants.                        )

MERIT REVIEW ORDER

JAMES E. SHADID, U.S. District Judge:

This cause is before the Court for consideration of Plaintiff's motion for leave to file an amended complaint and her motions for appointment of counsel. [5, 10, 18]. The *pro se* Plaintiff is a convicted prisoner who was transferred from the Illinois Department of Corrections (IDOC) to the Rock Island County Jail for resentencing. Plaintiff anticipates she will return to Pontiac Correctional Center after her sentencing.[1]

I. MERIT REVIEW

After merit review of Plaintiff's initial complaint, the Court found Plaintiff had articulated five separate claims against seven different Illinois Department of Corrections officers and medical employees. *See* October 26, 2021 Merit Review Order. The Court also dismissed various other potential claims and Defendants for failure to clearly state a claim upon which relief could be granted. *See* October 26, 2021 Merit Review Order.

---

[1] Plaintiff has filed a separate lawsuit concerning her living conditions at the jail. *See Gregory v. Rock Island County Jail,* Case No. 21-4039.

1

Plaintiff has now filed a motion for leave to amend his complaint. [18]. The motion is granted pursuant to Federal Rule of Civil Procedure 15. *See* Fed.R.Civ.P. 15. The Court is still required by 28 U.S.C. §1915A to "screen" the Plaintiff's amended complaint, and through such process to identify and dismiss any legally insufficient claim, or the entire action if warranted. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A.

Plaintiff's amended complaint identifies 12 Defendants including IDOC Director Rob Jeffries; Pontiac Wardens Leonta Jackson and Teri Kennedy; Sergeant Carrisa Garbe; Sergeant Sellers; Lieutenant Henry; Internal Affairs Officer Daniel Bailey; Correctional Officers Luke Wissen and Curl; Dr. Renzi; Dr. Tilden; and Nurse Hansen.

Plaintiff says she is a transgender woman. On February 28, 2019, she transferred to Pontiac Correctional Center and in June of 2019, Plaintiff was diagnosed with Gender Dysphoria. Plaintiff says she has also been diagnosed with Bipolar Disorder, Post Traumatic Stress Disorder, Adjustment Disorder, and anxiety.

Plaintiff's amended complaint provides an overview of facts, followed by ten counts. To avoid confusion, the Court will only consider the claims outlined in the Plaintiff's articulated "counts." (Amd. Comp, p. 29-46).

A. LIVING CONDITIONS/CELL ASSIGNMENT

After Plaintiff was diagnosed with Gender Dysphoria, he was moved to the East Protective Custody (EPC) housing unit and claims other inmates immediately began

sexually harassing her and groping her.  Plaintiff filed a Prison Rape Elimination Act (PREA) report, but she was told without any evidence, there was nothing officials could do.

On November 7, 2019, Plaintiff was moved into a cell with Inmate KG, an inmate with a history of violence towards LGBTQ inmates.  Plaintiff asked Defendants Garbe, Sellers, and Dr. Renzi to move her to a single cell for her protection, but no action was taken. Plaintiff was advised she could refuse housing and would be taken to segregation. However, Plaintiff says protective custody inmates are housed with general population inmates in segregation and therefore she still feared for her safety.

On November 27, 2019, Inmate KG physically assaulted Plaintiff striking her several times.  Plaintiff initially denied the assault for fear of retribution, and both inmates were moved to segregation.  After an investigation, Plaintiff was released approximately one week later.  Inmate KG admitted assaulting Plaintiff because she was transgender and an officer observed the incident.

From January 2020 to April 2020, Plaintiff lived with two different inmates in EPC who each demanded to be moved. One threatened Plaintiff before he was transferred to a different cell.

On April 15, 2020, Defendant Henry told Plaintiff to move into a cell with a mentally disturbed inmate.  Plaintiff refused and was moved to segregation. On April 16, 2020, Defendant Henry moved Plaintiff into a cell with Inmate TY who Plaintiff says was "sexually aggressive." (Amd. Comp., p. 10).  Plaintiff told Defendant Henry she was concerned for her safety, but Plaintiff was again threatened with segregation.

Plaintiff attempted to declare a hunger strike due to her fears, but Defendants Sellers and Garbe ignored her request and refused to move her. Plaintiff filed PREA reports and continued to ask Defendants Sellers and Garber to move her.

On April 22, 2020, Defendant Baily reviewed the PREA report and agreed to move Plaintiff to the South Protective Custody (SPC) unit. However, Plaintiff was not immediately transferred, and Inmate TY tried to force Plaintiff to have sex that evening.

On April 23, 2020, Plaintiff asked to be taken to suicide watcher for her protection. Apparently, Plaintiff was concerned she might be housed near an inmate who had previously attempted to assault her. While on watch, Plaintiff claims she was denied soap, toothpaste, and showers due to her gender identity. Plaintiff says Defendant Curl also ignored her daily medical shower permit. The Court notes Plaintiff requested placement on suicide watch where all inmates are denied property. In addition, Plaintiff has explained her permit was not for daily showers, but for private showers.

On April 25, 2020, Plaintiff claims Defendant Curl sexually harassed her and mocked her based on her transgender status. On April 27, 2020, Plaintiff was removed from suicide watch and moved to SPC. Plaintiff "attempted to check out of protective custody," but her request was denied. (Amd. Comp, p. 12). Plaintiff does not explain why she wanted to move.

Plaintiff submitted grievances, but Defendant Henry told her they did not allow special accommodations due to sexual orientation. Furthermore, if there was a serious issue, Plaintiff would not have been approved for double ceiling.

4

On May 7, 2020, Plaintiff was transferred back to EPC in a cell directly in front of a security camera and near a guard tower. There were only four other inmates assigned to her gallery. In addition, the inmate assigned to clean the gallery, Inmate RW, was a friend who had helped Plaintiff avoid harassment.

On May 9, 2020, Defendant Garbe fired Inmate RW and spread lies that Plaintiff and the inmate were caught having sex. Plaintiff says if the allegation were true, other officers would have seen it. Garbe was aware the false rumors would increase harassment against Plaintiff. Plaintiff reported the incident to Defendant Bailey, but no action was taken.

Plaintiff maintains Defendant Garbe continued her campaign of sexual harassment and isolated Plaintiff from friends or LGBTQ inmates. The Defendant intentionally moved Plaintiff's yard time to coincide with inmates who could pose a threat to Plaintiff. On July 6, 2020, Plaintiff reported this activity to Defendant Bailey, but no action was taken.

B. DISCIPLINARY TICKETS

Plaintiff says before she came out as a transgender woman, she had received seven disciplinary tickets in approximately 14 years. However, since Plaintiff has arrived at Pontiac, she has received six tickets in one year.

For instance, immediately after Plaintiff reported Defendant Garbe's conduct on July 6, 2020, the Defendant came to Plaintiff's cell and told her she was not allowed to talk on the gallery. Plaintiff told Defendant Garbe there was no such rule, and again asked to file a PREA. Plaintiff was not allowed to file a report. Instead, Defendant

5

Garbe wrote a disciplinary ticket against Plaintiff for disobeying a direct order and intimidation and threats based on asking to file a PREA.

Plaintiff was taken to segregation for ten days where she was placed near general population inmates who harassed her daily. On July 16, 2020, the Adjustment Committee considered the ticket. The charge was downgraded to insolence and Plaintiff lost one month of commissary.

In August of 2018, Plaintiff wrote a PREA against Defendant Wissen which was not investigated. On August 18, 2020, Defendant Wissen made derogatory statements to the Plaintiff and wrote a disciplinary ticket for using the phone at the kiosk. Plaintiff says her gallery officer had given her permission to use the phone.

Plaintiff claims the tickets were written due to her transgender status.

C. MEDICAL CARE

Plaintiff claims from June 2019 to March 2020 she repeatedly asked Defendant Renzi for Hormone Replacement Therapy (HRT), but it was denied. Plaintiff also says she wrote grievances requesting HRT, gender reassignment surgery, and a transfer to a women's facility, but never received a response.

Plaintiff finally received some HRT treatment in March of 2020. However, HRT requires strict procedures and must be received in regular intervals. Plaintiff says the medication was provided in pill form, rather than more effective injections. In addition, it was sporadically dispensed. As a result, Plaintiff experienced nausea, cramps, and mental health issues. Plaintiff complained to Defendants Dr. Tilden and Dr. Renzi, but nothing was done.

Plaintiff also claims Defendant Dr. Renzi has mismanaged medications for her mental health conditions by simply recycling medications on an approved list rather than provide appropriate mediations. Plaintiff does not explain this claim beyond her general statement.

On September 8, 2020, Defendant Nurse Hansen informed the Plaintiff the medical shower permit approved by Defendant Dr. Tilden was discontinued. The permit was issued so Plaintiff would not have to shower in front of other inmates. Plaintiff told the Defendant she would face extreme sexual harassment without the permit, but Defendant Hansen told Plaintiff to get used to it. Plaintiff claims it was Defendant Hansen's decision to terminate the permit.

Plaintiff also wrote to Defendants Dr. Renzi and Dr. Tilden, but his shower permit was not renewed.

D. TRANSFER

Plaintiff says Wardens Kennedy and Jackson were well aware of the difficulties transgender inmates face, but they repeatedly ignored her multiple grievances and PREA reports. Plaintiff says she faced continued sexual harassment and fears for her safety at Pontiac. Consequently, Plaintiff repeatedly filed grievances and requested a transfer to a women's facility. Defendants Dr. Renzi and Dr. Tilden can recommend a transfer, but neither would consider her requests or accessed the need for a transfer. In addition, Defendants Kennedy, Jackson, and Jeffreys have denied Plaintiff's appeals.

Plaintiff says it is the Illinois Department of Correction's (IDOC) policy and practice to assign housing based on an inmate's sex at birth rather than make an

7

individual determination based on appropriate placement. Defendants are aware that applying this policy to a transgender inmate puts her at substantial risk. In addition, staff members have no training in dealing with transgender inmates.

E.  STATED COUNTS

Count I alleges Defendant IDOC Director Jeffrey violated Plaintiff's equal protection rights based on the policy and practice of refusing to consider her transgender status in assigning her to a male institution. *See Hampton v. Baldwin*, 2018 WL 5830730, at *12 (S.D.Ill. Nov. 7, 2018)(addressing whether transgender inmates are a protected class, but finding claim based on placement in male institution).

"It is well-established that suits against government officials in their official official capacity are suits against the governmental entity of which the officer is an agent." *Ames v. Randle*, 933 F.Supp.2d 1028, 1038 (N.D. Ill. March 18, 2013); *citing Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). A civil rights lawsuit for damages against a state official in his official capacity is barred by the Eleventh Amendment. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). However, a claim for injunctive relief is not prohibited if a plaintiff demonstrates his constitutional rights were violated pursuant to an unconstitutional policy, practice, or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

It is unclear at this point whether Plaintiff can pursue any claim for injunctive relief. Plaintiff is not currently housed in an IDOC facility, nor is she currently in IDOC custody. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to

8

be retransferred." *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).  Plaintiff says she will be transferred back to Pontiac or another IDOC facility after she is resentenced. This is an issue which can be better addressed once Defendants are served.

Count II alleges Defendant IDOC Director Jeffreys and Pontiac Warden Jackson violated Plaintiff's equal protection rights in their official capacities based on the pervasive policy and practice of allowing staff to verbally harass Plaintiff based on her transgender status. Plaintiff's allegations are limited to her stay in Pontiac, but she has adequately alleged an official capacity claim against the Defendants. *See Hampton*, 2018 WL 5830730, at *12 (transgender inmate alleges equal protection claim based on ongoing sexual harassment).  In addition, it is unclear whether Plaintiff can obtain injunctive relief for this claim.

Counts III through X articulate claims against various Defendants in their individual capacities.  At the conclusion of each count, Plaintiff seeks to add an official capacity claim against Defendants Jeffreys and Jackson in order to obtain injunctive relief.  Plaintiff may seek injunctive relief for his allegations.  However, Plaintiff has not articulated official capacity claims in Counts III through X based on a specific pattern or practice. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Therefore, the Court will dismiss Plaintiff's claims against Defendants Jeffreys and Jackson in each of these counts.

Count III alleges Defendants Kennedy, Garbe, Sellers, and Dr. Renzi failed to protect Plaintiff from a substantial risk of harm.  Plaintiff says Defendants Garbe, Sellers, and Renzi knew Inmate KG posed a threat to Plaintiff based on his repeated

9

requests to be moved, but they took no action and Plaintiff was assaulted on November 27, 2019. Plaintiff has adequately stated a claim against these three Defendants.

However, Plaintiff says former Warden Kennedy knew about the assault due to Plaintiff's grievances and the disciplinary ticket against Inmate KG, but he took no action to prevent further harm. The Court notes the Warden was not notified of the specific threat to Plaintiff until after the assault, the inmate had already been moved, and the inmate was disciplined for the assault. Furthermore, the Defendant is no longer Warden. Therefore, the Court will dismiss Defendant Kennedy.

Count IV alleges Defendants Henry, Sellers, Garbe, and Bailey failed to protect him from Inmate TY's assault on April 22, 2020. Plaintiff has adequately alleged he told the Defendants of the specific danger he faced, but no action was taken.

Count V alleges Defendants Garbe and Bailey failed to protect him from a substantial risk of harm from other inmates. Plaintiff says Defendant Garbe was aware of the sexual harassment Plaintiff faced and she was aware of the previous assaults, but continued to take steps to put Plaintiff at risk such as spreading the false rumor about sexual activity and intentionally changing Plaintiff's yard time to place her in greater danger. Defendant Bailey was informed of Defendant Garbe's conduct, but took no action.

Counts VI, VII, and VIII each allege violations of Plaintiff's Eighth Amendment rights based on deliberate indifference to a serious medical condition. Count VI states Defedants Renzi, Tilden, and Hansen violated Plaintiff's rights when they discontinued her shower permit forcing her to shower in front of other inmates and face additional

sexual harassment. The Court notes the shower permit is not really treatment for a serious medical condition as much as it is a way to ensure Plaintiff's safety. While Plaintiff has articulated a claim, the Court finds the allegation is better stated as a general violation of his Eighth Amendment rights, rather than deliberate indifference to a serious medical condition.

Count VII alleges Defendants Renzi and Tilden were deliberately indifferent when they first delayed treatment for his gender dysphoria, failed to insure he received the medication in the required intervals, and failed to monitor treatment for his condition. Plaintiff also adds Defendant Dr. Renzi failed to provide appropriate care for his bipolar disorder and anxiety by sticking to the "formulary list" for medications. (Amd. Comp., p. 39). Plaintiff's general statement that he disagreed with the medications provided does not rise to the level of a constitutional violation. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)("[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."). Therefore, this claim will be limited to Plaintiff's allegations concerning treatment for gender dysphoria.

Count VIII alleges Defendants Dr. Renzi and Dr. Tidlen were deliberately indifferent to his gender dysphoria when they failed to approve needed surgery and therapy, and failed to evaluate her for transfer to an appropriate institution. Since this allegation simply provides additional reasons the two defendants were deliberately

indifferent to gender dysphoria, the Court will combine Counts VII and VIII into one claim to prevent confusion.

Count IX alleges IDOC Director Jeffreys and Warden Jackson violated his rights pursuant to the Americans with Disabilities Act (ADA). To articulate a claim, Plaintiff must allege: (1) she was a qualified individual with a disability; (2) she was excluded from or denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination; and (3) the exclusion, denial of benefits, or discrimination was because of her disability. *E.g., Lacy v. Cook Cty., Illinois*, 897 F.3d 847, 853 (7th Cir. 2018) (citation omitted).

Plaintiff alleges the Defendants have discriminated against her because of her disability by failing to provide the reasonable accommodation of transfer to a female facility. It is unclear if gender dysphoria is a disability. For the purposes of notice pleading, the Court will allow Plaintiff to proceed with this claim based on a failure to accommodate her disability. *See Venson v. Gregson*, 2021 WL 673371, at *3 (S.D.Ill. Feb. 22, 2021)(based on the "unsettled state of law," *pro se* prisoner allowed to proceed with an ADA claim based on disability of gender dysphoria); *Hampton,* 2019 WL 3046332, at *1 (*pro se* prisoner allowed to proceed with ADA claim for failure to provide reasonable accommodations for gender dysphoria disability). However, the proper Defendant for this claim is IDOC Director Jeffreys and therefore the Court will dismiss Warden Jackson. *See Venson,* 2021 WL 673371, at *3 ("proper defendant is the IDOC itself, or its director in his or her official capacity."). In addition, it is still unclear whether Plaintiff

will be able to proceed with this claim since she can only obtain injunctive relief under the ADA and she is not currently in IDOC custody.

Count X alleges Defendants Kennedy, Garbe, Sellers, Henry, Jackson, Bailey, Dr. Renzi, Dr. Tilden, Nurse Hansen, Wissen, Curl, and Jeffreys violated the state law tort of intentional infliction of emotional distress. To state a claim, a plaintiff must allege (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants either intended to inflict severe emotional distress or knew there was a high probability that their conduct would cause severe emotional distress; and (3) the defendants' conduct in fact caused severe emotional distress. *McGreal v. Vill. Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017). This claim "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *McGrath v. Fahey*, 126 Ill.2d 78, 90, 533 N.E.2d 806, 809 (1988)(internal quotation omitted). "Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).

Plaintiff repeats the previous counts against the named Defendants in support of this claims. However, Plaintiff's only claims against Defendants IDOC Jeffreys and Warden Jackson are in their official capacities, not based on the Defendants conduct. Plaintiff has also failed to articulate a claim against Defendant Kennedy.

In addition, Plaintiff's only allegation against Defendant Wissen is he made a derogatory comment and wrote one ticket based on unauthorized use of the phone. Her only allegation against Defendant Curl is she mocked Plaintiff and made fun of his transgender status on one day. Isolated name calling or one minor disciplinary ticket

13

do not rise to the level of conduct which goes "beyond all bounds of decency." *Honaker*, 256 F.3d at 490. For the stated reasons, the Court will dismiss this claim as to Defendants Jeffreys, Jackson, Kennedy, Wissen, and Curl.

The Court also notes Plaintiff has failed to state any claims against Defendants Kennedy, Wissen, and Curl in her amended complaint, but these Defendants were previously dismissed in the initial Merit Review Order so no further action is required. *See* October 26, 2021 Merit Review Order.

## II. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed two motions for appointment of counsel. [5, 10]. In considering Plaintiff's motions, the Court must consider two questions. First, "has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), *citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993). Plaintiff showed at least some attempt to find counsel.

Second, the Court must determine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). t 655. The Court must consider all aspects of the litigation including gathering evidence and responding to motions. *Eagan v. Dempsey*, 2021 WL 456002, at *8 (7th Cir. 2021).

There are no "fixed criteria" to assist in the determination of competency. *Eagan*, 2021 WL 456002, at *9. Instead, a court can consider a variety of factors including "literacy, communication skills, educational level, litigation experience, intellectual

capacity, and psychological history." *Id.* "These are practical inquiries, and the court should consider any available relevant evidence." *Id.*

There are also "no fixed criteria" for evaluating the factual or legal difficulty of any case. *Id.* "Indeed, we have resisted laying down categorial rules or presumptions for or against recruitment of counsel; rather, '[t]he inquiry into plaintiff competence and case difficulty is particularized to the person and case before the court.'" *Id., quoting Pruitt,* 503 F.3d at 656.

Further complicating the issue, the Court cannot require an attorney to accept *pro bono* appointment in a civil case. The most the Court can do is ask for volunteer counsel. *See Jackson v. County of McLean,* 953 F.2d 1070, 1071 (7th Cir. 1992).

> Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases. District courts are thus placed in the unenviable position of identifying, among a sea of people lacking counsel, those who need counsel the most. *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014).

Ultimately "[t]he question is not whether a lawyer would present the case more effectively than the *pro se* plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant." *Pruitt,* 503 F.3d at 655 (internal quotation omitted). Instead, the test is whether the litigant is competent to litigate her own claims. *Id.*

Plaintiff says she has a high school education, she suffers from mental illness, and her current law library is inadequate. Nonetheless, Plaintiff's filings are clear, on point, and cite to relevant case law. Plaintiff also noted the deficiencies in her previous complaint and addressed those issues in her amended complaint. Furthermore, this case

is in the initial proceedings and Plaintiff has indicated she will return to an IDOC facililty.

Plaintiff next alleges she needs an attorney to depose several witnesses, to hire expert witnesses, and to obtain necessary reports and studies. First, it is not clear an expert witness is needed in this case. Second, although Plaintiff is proceeding *pro se,* she is still responsible for his discovery costs. *See Kyles v. Mathy*, 2010 WL 3024494, at *3 (C.D.Ill. Aug. 2, 2010)( "the statute does not relieve a pro se prisoner proceeding *in forma pauperis* from paying any of his discovery costs."). Therefore, if Plaintiff intends to take any depositions, she must pay for a stenographer. *See Smith v. Pendergrass,* 2003 WL 21919182, at 2-3 (N.D.Ind. June 17, 2003); *see also Smith v. Campagna,* 1996 WL 364770, at 1 (N.D.Ill. June 26, 1996) ("[T]his court has no authority to finance or pay for a party's discovery expenses even though the party has been granted leave to proceed in forma pauperis under 28 U.S.C. § 1915(a)."). The Court will not recruit counsel simply to absorb Plaintiff's costs. Once all Defendants have been served, the Court will set this matter for a hearing to review claims and procedures and will enter a Scheduling Order with important information to assist a *pro se* plaintiff during discovery.

The Court does have some concerns about the potential complexity of Plaintiff's allegations. However, based on the current record, Plaintiff's motions are denied at this stage of the proceedings. [5, 10].

### III. CONCLUSION

Plaintiff may therefore proceed with the following claims:

Count I: Defendant IDOC Director Jeffreys violated Plaintiff's equal protection rights based on the policy and practice of refusing to consider her transgender status in assigning her to a male institution.

Count II: Defendant IDOC Director Jeffreys and Pontiac Warden Jackson violated Plaintiff's equal protection rights in their official capacities based on the pervasive policy and practice of allowing Pontiac Correctional Center staff to verbally harass Plaintiff based on her transgender status.

Count III: Defendants Garbe, Sellers, and Dr. Renzi failed to protect Plaintiff from an inmate assault on November 27, 2019.

Count IV: Defendants Henry, Sellers, Garbe, and Bailey failed to protect her from an Inmate assault on April 22, 2020.

Count V: Defendants Garbe and Bailey failed to protect her from a substantial risk of harm from other inmates. Defendant Garbe spread a false rumor about sexual activity and intentionally changing Plaintiff's yard time to place her in greater danger. Defendant Bailey was informed of Defendant Garbe's conduct but took no action.

Count VI: Defendants Renzi, Tilden, and Hansen violated Plaintiff's Eighth Amendment rights when they discontinued her shower permit forcing her to shower in front of other inmates and face additional sexual harassment.

Count VII: Defendants Renzi and Tilden were deliberately indifferent to Plaintiff's gender dysphoria when they delayed HRT medication, failed to provide HRT medication in required intervals, did not provide required therapy, failed to approve needed surgery, and refused to access Plaintiff for transfer to a women's institution.

Count VIII: IDOC Director Jeffreys violated Plaintiff's rights pursuant to the Americans with Disabilities Act (ADA) when Plaintiff was denied a reasonable accommodation for gender dysphoria.

Count IX alleges Defendants Garbe, Sellers, Henry, Bailey, Dr. Renzi, Dr. Tilden, and Nurse Hansen violated the state law tort of intentional infliction of emotional distress.

Plaintiff has added two additional claims and two new Defendants: Dr. Tilden

and Nurse Hansen. The Court will attempt service on the new Defendants before setting this matter for a hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure.

IT IS THEREFORE ORDERED:

1) Plaintiff's motion for leave to file an amended complaint is granted. [18]. The Clerk of the Court is directed to add Defendants Dr. Tilden and Nurse Hansen.

2) Pursuant to its merit review of the amended complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff alleges the nine claims identified in this order against Defendants Jeffreys, Jackson, Garbe, Sellers, Dr. Renzi, Henry, Baily, Dr. Tilden, and Nurse Hansen. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

3) Most of the named Defendants have been served. Therefore, the Clerk is to attempt service on the two new Defendants, Dr. Tilden and Nurse Hansen, by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

4) Defendants Dr. Tilden and Nurse Hansen shall file an answer within 60 days of the date the waiver is sent by the Clerk. **The remaining Defendants must file an amended answer within 30 days of this order.**

5) **Plaintiff shall immediately notify the Court, in writing, of any change in her mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

6) Plaintiff's motions for appointment of counsel are denied [5], [10].

7) The Clerk is directed to set an internal court deadline within 45 days for the court to check on the status of service and set scheduling deadlines.

ENTERED this 2nd day of March, 2022.


                                              s/James E. Shadid
                         _____
                                   JAMES E. SHADID
                            UNITED STATES DISTRICT JUDGE