E-FILED
Thursday, 20 March, 2025  12:35:46 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| CORY GREGORY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.: 21-cv-1097-JES |
| | ) | |
| IDOC DIRECTOR JEFFREYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Defendants have filed a motion for partial summary judgment asserting that Plaintiff's amended complaint, Counts I-III and V-VIII**,** must be dismissed; that Count IV must be dismissed as to Defendant Bailey only, and that Count IX must be dismissed as to Defendants Sellers, Henry, Bailey, and Renzi, but not Garbe. (Doc. 70). Plaintiff has filed a response, and Defendants have filed an untimely Reply and motion for leave (Doc. 75) which is GRANTED[1]. For the reasons indicated herein, Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.

**MATERIAL FACTS**

Cory Gregory, a/k/a Harli Quinn, is a pro se transgender prisoner currently held at the Pontiac Correctional Center. Plaintiff asserts deliberate indifference, failure to protect, and equal

---

[1] Defense counsel asserts that he was new to the Office of the Illinois Attorney General and unbeknownst to him, it was his responsibility to have calendared the Response date. Fed. R. Civ. P. 6(b)(1)(B) permits a court to extend deadlines—even after the time to act has expired—if there is good cause and the party "failed to act because of excusable neglect." *Bowman v. Korte*, 962 F.3d 995, 996 (7th Cir. 2020). Factors to be considered in such a request are "the extent of, the reason for, and any prejudice from a delay, as well as the movant's good faith." *Walton v. Trzebiatowski*, No. 23-2571, 2024 WL 1270428, at *2 (7th Cir. Mar. 26, 2024) (citation omitted). As Plaintiff has not objected or asserted prejudice, there was only a two-day delay, and the movant appears to have acted in good faith, leave is granted.

1

protection claims under 42 U.S.C. §1983; an Americans with Disabilities Act ("ADA") claim, and an Illinois state law claim for the Intentional Infliction of Emotional Distress ("IIED").

Plaintiff alleges that IDOC Director Defendant Jeffreys, acting in his official capacity, violated her Fourteenth Amendment equal protection rights by housing her in a men's prison ("Count I"); that Defendant Jeffreys and Pontiac Warden Jackson, in their official capacities, violated her equal protection rights by allowing staff's gender-based sexual harassment against her ("Count II"); that Defendants Renzi, Garbe, and Sellers failed to protect her from an inmate assault on November 27, 2019 ("Count III"); that Defendants Henry, Sellers, Garbe, and Bailey failed to protect her from an inmate assault on April 20, 2020 ("Count IV"); that Defendant Garbe spread false rumors about Plaintiff and otherwise put her in danger, and that Defendant Bailey was aware but took no action ("Count V"); that Defendant Renzi was deliberately indifferent when she failed to reinstate Plaintiff's shower permit which had been discontinued by a health care provider ("Count VI."); that Defendant Renzi was deliberately indifferent by failing to provide Hormone Replacement Therapy ("HRT"), gender reassignment surgery, and transfer to a women's prison ("Count VII"); that Defendant Jeffreys violated the ADA when he refused to reasonably accommodate Plaintiff by transferring her to a women's prison ("Count VIII"); and that Defendants Renzi, Garbe, Sellers, Henry, and Bailey violating Illinois state law through the Intentional Infliction of Emotional Distress.

In drafting this order, the Court has relied on Defendants' Undisputed Material Facts ("UMF") which Plaintiff does not challenge, save UMF 16 which states "Plaintiff started taking hormones in June of 2019 after she 'started buying them off the gallery.'" However, this UMF is based on Plaintiff's own deposition testimony (Doc. 70- 1, at 61), so the basis of the objection is unclear.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 7477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories, or admissions that establish that there is a genuine triable issue; he "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby*, *Inc.,* 477 U.S. 242, 256-57 (1986) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## ANALYSIS

### Counts I and II Against Defendants Jeffreys and Jackson

Plaintiff asserts two equal protection claims seeking only declaratory and injunctive relief. While Eleventh Amendment sovereign immunity precludes a money damages claim against a state official in his official capacity, a claim for injunctive relief is allowed. *Thomas v.*

*Walton*, 461 F. Supp. 2d 786, 799 (S.D. Ill. 2006) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985)).

The Equal Protection Clause of the Fourteenth Amendment provides that "'all persons similarly situated should be treated alike' and guards against 'intentional and arbitrary discrimination.'" *Griffin v. Monti*, No. 24-01685, 2024 WL 4645361 (S.D. Ill. Oct. 31, 2024) (quoting *Tay v. Dennison*, 457 F. Supp. 3d 657, 684 (S.D. Ill. 2020), in turn quoting *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1050 (7th Cir. 2017)). To establish an equal protection claim, "a plaintiff must at least allege that he was: (1) 'a member of a protected class'; (2) 'otherwise similarly situated to members of the unprotected class'; and (3) 'treated differently from members of the unprotected class.'" *Greene v. Carr*, No. 20-119, 2021 WL 2649607, at *2 (W.D. Wis. June 28, 2021) (quoting *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005)).

Plaintiff claims that transgender is a protected class, citing *Bostock v. Clayton County Georgia*, 590 U.S. 644 (2020), where the Supreme Court found transgender employees to be a protected class under Title VII of the Civil Rights Act of 1964. Defendants dispute that *Bostock* applies, as that decision interpreted a specific statute, not Fourteenth Amendment equal protection. The Court finds support for this position in *Bostock's* language specifically limiting its finding to Title VII. "The employers worry that our decision will sweep beyond Title VII to other federal or state laws that prohibit sex discrimination. But none of these other laws are before us; we have not had the benefit of adversarial testing about the meaning of their terms, and we do not prejudge any such question today." *Id.* at 681.

To date, "Neither the Seventh Circuit nor the Supreme Court has determined whether transgender individuals constitute a protected class [in an equal protection claim]. *Gregory v.*

*Bustos*, No. 21-4039, 2023 WL 5352887, at *8–9 (C.D. Ill. Aug. 21, 2023) (quoting *Tay*, 457 F. Supp. 3d at 680). Regardless, "Even where trans people have not been found to constitute a protected class, the Seventh Circuit has held that heightened or intermediate scrutiny applies when the complaint is based on sex discrimination." *Tay*, at 682 (finding that discrimination based on transgender status is sex discrimination) (citing *Whitaker*, 858 F.3d at 1050).

Intermediate scrutiny has been described as falling "[b]etween [the] extremes of rational basis review and strict scrutiny[.]" *West v. Radtke*, 48 F.4th 836, 852 (7th Cir. 2022) (quoting *Clark v. Jeter*, 486 U.S. 456, 461 (1988)). Under intermediate scrutiny, "Plaintiff must show that: '(1) she has been intentionally treated differently from others who are similarly situated; and (2) there is a substantial relationship between this difference and a sufficiently important government interest'" *Bustos*, 2023 WL 5352887, at *9 (C.D. Ill. Aug. 21, 2023) (quoting *Mitchell v. Price*, No. 11-260, 2014 WL 6982280, at *8 (W.D. Wisc. 2014) (citing *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2012) (collecting cases and holding that heightened scrutiny applied to transgendered plaintiff's equal protection claims).

Defendants claim that Plaintiff's placement in a men's prison is not evidence of less favorable treatment, comparing her circumstance to that of "non-transgendered prisoners." (Doc. 70 at 12). Plaintiff's circumstance, however, should be compared to that of cisgender women. *See Tay v. Dennison*, No. 19-00501, 2020 WL 2100761, at *2 (S.D. Ill. May 1, 2020) (finding that a transgender woman prisoner "is similarly situated to cisgender woman prisoners for purposes of an equal protection claim") (citing *Hampton v. Baldwin*, No. 18-550, 2018 WL 5830730, at *11 (S.D. Ill. Nov. 7, 2018) (finding that plaintiff's transgender identity caused her to be treated differently from similarly situated female inmates); *Doe v. Massachusetts Dep't of Corr.*, No. 17-12255, 2018 WL 2994403, at *9 (D. Mass. June 14, 2018) (finding that

transgender woman was similarly situated to "other female inmates in Massachusetts prisons"); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1120 (N.D. Cal. 2015) (same).

Here, it is uncontested that Plaintiff was treated differently than cisgender women who are housed in women's prisons as a matter of course, so Plaintiff provides sufficient facts to support the first part of her claim. The next consideration is the nature of the governmental interest at stake and its substantial relationship to that difference. In viewing this, the Court notes that Defendants have not identified the important governmental interest being served by maintaining Plaintiff in a women's prison. As a result, the Court cannot find that the difference in treatment is substantially related to any such interest. Defendants' motion for summary judgment is DENIED as to Count I.

Plaintiff's next claim is that Defendants Jeffreys and Jackson violated equal protection by allowing a pervasive practice of staff sexually harassing her due to her transgender status. Plaintiff pleads that male prisoners do not endure the same insults, threats, intimidation, and humiliation she has faced. She testified that prisoners make sexual remarks to her daily: and weekly expose themselves, grab her, and call her a faggot, he-she, and "it". The guards do nothing to stop this and often participate in the name-calling. (Doc. 70-1 at 9). Defendants do not particularly deny this, only asserting that mere verbal harassment is insufficient to state a claim. Here, however, Plaintiff also complains of being grabbed and having others expose their genitals to her. As noted, in *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015), whether or not verbal harassment is enough on its own, it can be enough if accompanied by an action. This amounts to a material issue of disputed fact. Defendants' motion for summary judgment is DENIED as to Count II.

As an aside, Rob Jeffreys is no longer the Acting IDOC Director having been replaced by

Latoya Hughes; and former Pontiac Warden Leonta Jackson has been replaced by Mindi Nurse.

The clerk will be directed to substitute Latoya Hughes in place of Defendant Jeffreys and Mindi

Nurse in place of Defendant Jackson. *See Venson v. Gregson*, No.18-2185, 2021 WL 673371, at

*1 (S.D. Ill. Feb. 22, 2021). "Pursuant to Federal Rule of Civil Procedure 25, a suit does not

abate when a party in an official capacity ceases to hold office while the action is pending, but

the officer's successor is automatically substituted as a party." (citing Fed. R. Civ. P. 25(d)).

### COUNT III AGAINST DEFENDANTS GARBE, SELLERS, AND RENZI

Plaintiff asserts that even though aware of the risk, Defendants Renzi, Garbe, and Sellers

failed to protect her from a November 27, 2019 attack by her cellmate Gibbs. Prison officials

have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of

other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations omitted). "But *liability*

of a jail officer for failure to protect an inmate only materializes if the officer knew the inmate

faced a 'substantial risk of serious harm' and 'disregard[ed] that risk by failing to take reasonable

measures to abate it.'" *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008).

To succeed on such a claim, an inmate must first demonstrate she is "incarcerated under

conditions posing a substantial risk of serious harm." *Bradley v. Price*, No. 20-48, 2021 WL

1895062, at *3 (W.D. Wis. May 11, 2021) (quoting *Farmer*, 511 U.S. at 834). There must be a

showing that the official acted with subjective deliberate indifference. "[T]he official must both

be aware of facts from which the inference could be drawn that a substantial risk of or serious

harm exists, and he must also draw the inference." *Id.* (citing *Farmer*, at 837). "A prisoner

normally proves actual knowledge of impending harm by showing that he complained to prison

officials about a specific threat to his safety." *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991).

On November 7, 2019, Plaintiff was placed in a cell with inmate Gibbs. It is uncontroverted that Plaintiff had not previously spoken to Gibbs nor been threatened by him, but she knew him to be violent toward LGBTQ inmates. Plaintiff testified that she spoke to Garbe, and Sellers; and wrote to Garbe, Sellers, and Renzi, asking to be moved but did not tell any of threats made by Gibbs. She did not do so as she believed "snitching" would put her in more danger. On November 27, 2019, Gibbs attacked Plaintiff in their cell, slamming her to the ground and striking her. When interviewed by a nurse after the incident, Plaintiff denied that there had been a fight as she was afraid of going to segregation.

Plaintiff fails to establish that Defendants Garbe, Sellers, and Renzi had actual knowledge of a risk that she would be harmed by Gibbs. To support an inference, the inmate's complaint must typically identify "a specific, credible, and imminent risk of serious harm." *Gevas v. McLaughlin*, 798 F.3d 475, 481 (7th Cir. 2015). Plaintiff did not relate a credible fear of an imminent harm, perhaps believing this would antagonize Gibbs but a complaint that conveys "only a generalized, vague, or stale concern about one's safety typically will not support [such] an inference." *Id.* at 480. *See Olden v. Jackson*, No. 23-1570, 2024 WL 4601042, at *2 (7th Cir. Oct. 29, 2024) (finding that Plaintiff's complaints that his cellmate was "aggressive," and "bullying" did not communicate a "specific, credible, and imminent risk of serious harm."). *Dale v. Poston*, 548, 563, 569 (7th Cir. 2008) (finding that inmate's vague reports of threats were insufficient). Defendants' motion for summary judgment is GRANTED as to Count III.

**COUNT IV AGAINST DEFENDANT BAILEY**

Count IV, which alleges failure to protect due to Plaintiff's April 22, 2020 assault by another inmate, names Defendants Bailey, Henry, Garbe, Sellers, and Renzi, but the motion for summary judgment is asserted only on behalf of Defendant Bailey. Plaintiff has alleged that, despite her protests, on April 16, 2020, Defendant Henry placed Plaintiff in a cell with inmate Young. Plaintiff claims that she told Defendant Henry as well as Defendants Bailey and Sellers that Young had previously made sexual advances towards her. Plaintiff testified that she went on a hunger strike to protest the housing assignment, but Defendants Sellers and Garbe did not record it.

Young continued to make advances during the time they were celled together but did not explicitly threaten her. Plaintiff submitted a Prison Rape Elimination Act ("PREA") report and was interviewed by Defendant Bailey on April 22, 2020, telling him she did not feel safe. Plaintiff testified that Bailey told her he would do what he could to get Plaintiff moved. That same day, unidentified officers came to Plaintiff's cell to tell her she would be moving to South House. However, they returned later and told her she would not move until the following day as the prisoner with whom she would be trading places was not ready. Plaintiff testified that Young attempted to sexually assault her that night, likely because he knew she was about to be moved. (Doc 70-1 at 11).

Defendant Bailey has submitted an affidavit asserting that he does not recall receiving any direct communications from Plaintiff other than those in the several PREA reports he filed on her behalf. Plaintiff testified that she wrote to Bailey, but agreed it was likely that he had not received her communications as guards allegedly routinely threw away communications directed to IA. Plaintiff's complaint about Defendant Bailey appears to be centered on the fact that he,

9

ultimately, did not prevent the attack by Young. Plaintiff testified about Bailey, "It was his responsibility to protect me from abuse, and when abuse happened, to stop that abuse, and he never did." (Doc 70-1 at 20). Here, it is uncontroverted that Defendant Bailey made arrangements to have Plaintiff moved the same day he spoke with her. Plaintiff learned later, through unnamed individuals, that the move would be delayed to the following day. There is nothing to support that Bailey was aware of the delay or could have prevented it to have acted with a conscious disregard for Plaintiff's safety. Defendants' Count IV motion for summary judgment as to Defendant Bailey is hereby GRANTED.

### COUNT V AGAINST DEFENDANTS GARBE AND BAILEY

Plaintiff alleges that Defendant Garbe "had a personal problem with LGBTQ people, and she harassed me pretty much every time she saw me, and she created an environment that allowed me to be sexually abused." (70-1 at 21). As part of this harassment, Garbe allegedly spread false rumors that Plaintiff had fellated another inmate through the chuckhole "for Ramen noodles." Plaintiff has provided the affidavit of inmate Gehret who attests that, while standing in line to go to yard, he heard Defendant Garbe make this statement to other officers. (Doc. 74 at 21). Plaintiff states that the falsehood was taken up by other inmates who would taunt him daily, saying they would give him Ramen noodles in exchange for sex, placing her at risk of harm and triggering her PTSD.

In addition to this harassment, Plaintiff claims that Garbe intentionally changed her yard time so she would be with inmates who were transphobic. Plaintiff told Defendant Bailey of Garbe's conduct, presumably when Bailey interviewed her in response to her PREA complaint, but he took no action.

10

Defendants respond that Plaintiff's claim is not actionable as she discloses only a risk of harm which is not compensable under the Eighth Amendment. *Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (stating that a plaintiff cannot recover tort damages under § 1983 "without then developing evidence of a recoverable injury.") *See Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) ("In order to succeed in a § 1983 suit, a plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages.'") (quoting *Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011)); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort [and] [a] tort to be actionable requires injury.").

The Court finds, however, that Plaintiff has alleged physical harm. She testified that after Defendant Garbe spread the rumor, "The level of sexual harassment and abuse skyrocketed[.]" Perpetrators touched her breasts and buttocks while referring to her sucking an inmate's penis through the chuckhole. (Doc. 70-1 at 50-52). This claim will proceed while the claim that Defendant Garbe changed her yard time to put her in proximity with transgender-phobic inmates will not, due to the lack of physical harm.

Plaintiff's claim that Defendant Bailey failed to intervene cannot proceed as there is nothing to substantiate that Bailey personally participated in the complained-of conduct. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). *See George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) (rejecting that "anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself…Only persons who cause or participate in the violations are responsible.")

11

**<u>Counts VI And VII Against Defendant Renzi</u>**

Plaintiff claims that Defendant Renzi was deliberately indifferent by delaying or preventing her from receiving treatment for gender dysphoria and failing to act when Plaintiff's private shower pass was canceled.

Plaintiff has identified as transgender since 2006 but did not openly identify as female until March 2019. (Doc. 24 at 7). Plaintiff was officially diagnosed in June 2019 but did not begin receiving hormone replacement therapy ("HRT"), until March 2020, when it was approved by the Transgender Care Committee ("TCC"). Plaintiff faults Defendant Dr. Renzi, the Pontiac Psychologist Administrator, for the delay, asserting that Defendant Renzi had the authority to order the HRT earlier. Plaintiff also claims there were occasions where her HRT prescriptions ran out and were not timely renewed, causing her to experience cramps, nausea, and emotional lability. Plaintiff also objects to having initially been given HRT medication orally, rather than by intramuscular injection, which would allegedly have been more effective.[2] Plaintiff further complains that transgender support groups at Pontiac only meet sporadically and that it was not "goal-oriented." Plaintiff blames Defendants Renzi for the HRT failings, for not providing Plaintiff opportunities for social transitioning, and for failing to recommend gender reassignment surgery and transfer to a women's prison. Plaintiff makes an additional claim that Defendant Renzi took no action when Plaintiff's private shower permit was discontinued by a healthcare provider.

 "Prison officials violate the Constitution if they are deliberately indifferent to prisoners' serious medical needs." *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828

---

[2] UMF 17 which is deemed admitted states that Plaintiff "currently receives injections of Estradiol twice a month, and an in injection of Eligard once a month."

(7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution."). "In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008) (quoting *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005)). "With respect to the culpable state of mind, negligence or even gross negligence is not enough; the conduct must be reckless in the criminal sense." *Id.*; *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).

Defendant Renzi has provided a sworn affidavit attesting that the decision to provide HRT, gender reassignment surgery, and transfer to a women's facility is made by the Transgender Care Committee composed of the Chief of Psychiatry, the Chief of Mental Health and the Transgender Care Committee chairperson. The decision would ultimately be relayed to Defendant Renzi in her position as Psychologist Administrator. (Renzi Dec. 70-3 at 2). Plaintiff does not address this in her response and does not identify counter-evidence to support that Defendant Renzi, rather than the Transgender Care Committee, made these decisions. As a result, no reasonable juror would find that Defendant Renzi had the authority to order these things so to have been deliberately indifferent.

Similarly, Defendant Renzi attests that she had "no role" in issuing shower permits. *Id*. The Court notes that the shower permit was canceled by the Nurse Practitioner, a member of the medical staff. Plaintiff offers nothing to support that Defendant Renzi, a member of the mental health staff, had the authority to override that decision.  Defendants' motion for summary judgment is GRANTED as to Counts VI and VII.

13

**Count VIII Against Defendant Jeffreys**

Plaintiff claims that Defendant Jeffreys violated the ADA by denying her a reasonable accommodation in the form of a transfer to a women's prison where she would allegedly have better access to programs and services related to her mental health and gender dysphoria. To succeed in a Title II[3] ADA claim a plaintiff must establish "that: (1) he is a qualified individual with a disability; (2) he was denied access to services, programs, or activities of a public entity or otherwise discriminated against by that public entity; and (3) the denial or discrimination was because of his disability." *McDaniel v. Wisc. Dep't of Corr.*, No. 20- 1919, 2021 WL 1515482, at *3 (E.D. Wis. Apr. 16, 2021) (citing *Shuhaiber v. Ill. Dep't of Corr.*, 980 F.3d 1167, 1170 (7th Cir. 2020) in turn citing *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). "A refusal to reasonably accommodate a disability is 'tantamount to denying access.'" *Id.* (quoting *Jaros v. Ill. Dep't of Corr.,* 684 F.3d 667, 672 (7th Cir. 2012)).

Defendants claim that Plaintiff cannot proceed under the ADA, as it specifically excludes gender dysphoria as a covered disability. Defendants cite 42 U.S.C. § 12211(b)(1) which exempts from coverage; "(1) transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders not resulting from physical impairments*, or other sexual behavior disorders[.]" (Emphasis added). Defendant also cites *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753-54 (S.D. Ohio, Apr. 25, 2018) for the holding that "gender dysphoria not resulting from physical impairment falls within the ADA's exclusionary language."

However, as a case in this Circuit more recently opined, "this issue is not nearly as straightforward as Defendants let on." *Venson*, 2021 WL 673371, at *2. *Venson* notes that in

---

[3] The ADA is organized into three titles prohibiting discrimination across three major spheres of public life: employment (Title I); public services, programs, and activities (Title II); and public accommodations (Title III). *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 852 (7th Cir. 2018).

14

2013, the Diagnostic and Statistical Manual of Mental Disorders reclassified "gender identity disorders" as "gender dysphoria. It is not clear whether gender dysphoria is similarly exempt "and, without a definitive answer by the Supreme Court or a federal court of appeals, some district courts have recognized ADA coverage for gender dysphoria." *See id*. (finding that the plaintiff had stated a gender dysphoria ADA claim) (collecting cases). *See also Bustos*, 2023 WL 5352887, at *17 where this Court declined to dismiss a gender dysphoria ADA claim, finding "significant disagreement" among the courts as to whether 'gender dysphoria' is a protected disability under the ADA."; *Iglesias v. True*, 403 F. Supp. 3d 680, 688 (S.D. Ill. 2019) (denying motion to dismiss, questioning whether the ADA's transgender exclusion applied to gender dysphoria) *See also Williams v. Kincaid*, 45 F.4th 759, 769-70 (4th Cir. 2022) (holding that gender dysphoria is not a "gender identity disorder" that is excluded under the ADA).

Although Plaintiff might have sufficiently established a qualified disability, she does not support that she has been denied access to programs, services, or activities due to this disability. She makes only generalized claims that she would have access to better programs at a women's prison and that staff there are better trained to treat trauma. The record substantiates that, while at Pontiac, Plaintiff has undergone "bottom" surgery, is receiving injectable HRT medication, and is undergoing transgender therapy, although she complains the therapy is not "goal oriented." The TRC has authorized various modalities to treat Plaintiff's gender dysphoria short of transfer to a women's prison. In *Hildreth v. Butler*, 960 F.3d 420, 430–31 (7th Cir. 2020), the Seventh Circuit framed the issue. "The question is not whether other modifications could have been made, such as those [plaintiff] seeks, but whether the accommodations made were reasonable." *Id*. (affirming the District Court's grant of summary judgment on prisoner's ADA claim). Here, too, the modifications were reasonable, and Plaintiff does not establish that the failure to transfer

15

was due to discriminatory animus. This, particularly as Plaintiff "does not have a constitutional right to . . . a transfer to the institution of her choice.". *Robertson v. Jeffreys*, No. 23-3006, 2023 WL 2777933, at *1 (C.D. Ill. Apr. 4, 2023) (citations omitted). Defendants' motion for summary judgment is GRANTED as to Count VIII.

COUNT IX AGAINST DEFENDANTS GARBE, SELLERS, HENRY, BAILEY, AND RENZI

Lastly, Plaintiff alleges that Defendants Garbe, Sellers, Henry, Bailey, and Renzi are liable to her for the intentional infliction of emotional distress, ("IIED"). Defendants' move for summary judgment on this count as to all Defendants save Garbe. Plaintiff's response does not address this Count.

Defendants assert that this claim is barred by state sovereign immunity under the Illinois State Lawsuit Immunity Act, 745 ILCS 5/1 et seq. This provides that a claim against an individual state employee may be barred as one against the State if (1) there are no allegations that the employee acted beyond the scope of his or her authority, (2) the duty alleges to have been breached was not owed to the public generally, and (3) the employee's actions involve matters within his or her official functions for the state. Defendants allege that these elements are present here.

However, as noted in *Kyles v. Beaugard*, No. 15-8895, 2023 WL 5277882, at *25 (N.D. Ill. Aug. 16, 2023), while "some courts have held that IIED claims are barred by state sovereign immunity. . . this is not a bright-line rule." There may remain material issues of fact as to whether a defendant's objectionable conduct was within the scope of his employment, or within his official functions for the State. *Id.* (citing *Taylor v. Wexford Health Sources, Inc.*, 2016 WL 3227310, at *6 (N.D. Ill. 2016)). The Court need not further consider this issue, however, as it

does not find that the conduct of Defendants Sellers, Henry, Bailey, and Renzi was sufficiently severe to amount to the intentional infliction of emotional distress.

"Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant intentionally or recklessly engaged in 'extreme and outrageous conduct' that resulted in severe emotional distress." *Tate v. Wexford Health Source Inc.*, No. 16-00092, 2016 WL 687618, at *3 (S.D. Ill. Feb. 19, 2016) (quoting *Somberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1030 (7th Cir. 2006)). "[E]motional distress alone is not sufficient to give rise to a cause of action. The emotional distress must be severe." *Somberger*, at 1030 (internal citations omitted). "Fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable." *Id*. To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Id.* at *3, (citing *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir. 2001) (additional citations omitted). *See Bustos*, 2023 WL 5352887, at *18 (C.D. Ill. Aug. 21, 2023) (denying IIED claim, finding that a handful of incidents of verbal comments, misgendering, and housing placement did not rise to the level of extreme and outrageous conduct).

The only Defendant whose conduct might arguably reach this level is Garbe and Defendants' motion is not asserted on her behalf. Defendants' motion is GRANTED as to Defendants Sellers, Henry, Bailey, and Renzi.

**IT IS THEREFORE ORDERED:**

1)    Defendants' Motion for leave to file an untimely Reply to Summary Judgment (Doc. 75) is GRANTED.

2)      Defendants' motion for Summary Judgment (Doc. 70), is GRANTED in part and DENIED in part. It is GRANTED as to the Count I claim against Defendant Jeffreys and the Count II claims against Defendants Jeffreys and Jackson. However, as these individuals no longer serve in these capacities, the clerk is to substitute Latoya Hughes in place of Jeffreys and Mindi Nurse in place of Jackson.

3)       Defendants' motion for summary judgment is GRANTED as to the Count III claim against Defendants Garbe, Sellers, and Renzi.

4)      Defendants' motion for summary judgment is GRANTED as to the Count IV claim against Defendant Bailey but remains as to Defendants Henry, Sellers, and Garbe.

5)      Defendants' motion for summary judgment is GRANTED as to the Count V claim against Defendant Bailey but remains as to Defendant Garbe. Defendant Bailey is DISMISSED with prejudice.

6)      Defendants' motion for summary judgment is GRANTED as to the Count VI and Count VII claims against Defendant Renzi. Defendant Renzi is DISMISSED with prejudice.

7)      Defendants' motion for summary judgment is GRANTED as to the Count VIII claim against Defendant Jeffreys.

8)      Defendants' motion for summary judgment is GRANTED as to the Count IX claim against Defendants Garbe, Sellers, Henry, Bailey, and Renzi.

The parties are to confer and, within 30 days, to file a Notice of Compliance suggesting a timeframe for a bench trial as to the Counts I and II claims for injunctive relief and the jury trial of the remaining claims. If the parties wish to engage in settlement discussions, they are to so indicate in the Notice of Compliance and a settlement conference will be scheduled with another Judge or Magistrate Judge.

ENTERED this 20th day of March, 2025

_____ s/James E. Shadid_____
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE